UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 5:12-cr-36-KKC
(Related Civil Action No. 5:13-cv-7301-KKC)

UNITED STATES OF AMERICA, PLAINTIFF,

V. **MAGISTRATE JUDGE'S REPORT & RECOMMENDATION**

AGUSTIN GUEVARA-BARCENAS, DEFENDANT.

*** *** *** ***

Agustin Guevara-Barcenas, (hereinafter "Guevara"), brought this action seeking to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 35]. Consistent with local practice, it has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Having been fully briefed, and for the reasons discussed below, it is recommended that Guevara's Motion to Vacate, Set Aside or Correct his Sentence be denied.

I. FACTUAL AND PROCEDURAL BACKGROUND

On May 30, 2007, Guevara, an illegal alien, was convicted of the felony offense of Assault Third Degree under KRS § 508.025(1)(a) by a final judgment of the Fayette (Kentucky) Circuit Court. He was sentenced to one (1) year incarceration, which was conditionally discharged for two (2) years. Guevara was deported on or about August 3, 2007. On February 19, 2012, Guevara was arrested at his home in Lexington, Kentucky. [Record No. 29]. On

March 22, 2012, Guevara was charged in US District Court with one count of Illegal Re-entry by a Previously Deported Alien, Subsequent to a Conviction for an Aggravated Felony, all in violation of 8 U.S.C. §§ 1326(a) and (b)(2). [Record No. 1]. Guevara pleaded guilty to the sole count against him, and on August 20, 2012, he was sentenced to a within guidelines sentence of fifty-seven (57) months imprisonment followed by three (3) years supervised release. [Record Nos. 4, 31].

On August 12, 2013, Guevara filed the instant motion seeking to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. [Record No. 35]. In his original motion, Guevara claims that his sentence was incorrect based on the United States Sentencing Guidelines because his offense was wrongly increased by 16 levels due to a previous state court conviction for Third Degree Assault. [Record No. 35]. The Court ordered Guevara to show cause why his claims should not be dismissed due the waiver of right to collateral attack in his plea agreement and/or why his claim should not be dismissed as procedurally defaulted. [Record No. 37]. In his response to the Court's show cause order, Guevara asserted: "I did instruck [sic] my attorney to file my direct appeal, which he never did." [Record No. 38]. Guevara made this statement without context or factual background and did not request a hearing on the issue. Assuming, only for the purpose of meeting the cause and prejudice test that this occurred, the Court will conduct an analysis of the merits of the claims he brings in the instant Motion to Vacate. However, for the reasons stated below, it is recommended that his *pro se* Motion to Vacate, Set Aside or Correct his sentence [Record No. 35] be denied.

## II. ANALYSIS

### A. WAIVER OF COLLATERAL ATTACK

As a preliminary matter, the United States argues that Guevara waived his right to collaterally attack his guilty plea, conviction, and sentence in his plea agreement, and is thus precluded from bringing this action. [Record No. 48]. Specifically, the United States relies on the following provision in his plea agreement:

> The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as determined by the Court at sentencing. *The Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.*

[Record No. 29] (emphasis added).

Guevara, of course, maintains that his plea was not knowing, intelligent and voluntary, but was instead the result of ineffective assistance of his counsel, and this action is therefore not barred by the waiver. Specifically, Guevara contends that he pleaded guilty in response to his attorney's promises that he would only receive a sentence of 24 months and that his prior felony conviction in Kentucky could not be used to enhance his offense level by 16 levels.

"A guilty plea is valid if it is entered knowingly, voluntarily and intelligently. Brady v. United States, 397 U.S. 742, 748 (1970). "The validity of a guilty plea is assessed by reviewing the totality of the circumstances surrounding the plea." Id. at 749. To be valid, a guilty plea must reflect "sufficient awareness of the relevant circumstances and likely consequences" of the plea. Id. at 748. A waiver of the right to collateral attack normally includes claims of ineffective assistance of counsel, so long as the claim of ineffective assistance of counsel does not relate to "the very validity of [the] guilty plea." In re Acosta, 480 F.3d 421, 422 (6th Cir. 2007), *see also*

Davila v. United States, 258 F.3d 448, 451 (6th Cir. 2001). The Acosta panel indicated that examples of such a claim included that "the plea was not knowing or voluntary, or was the product of ineffective assistance of counsel." Acosta, 480 F.3d at 422. In this case, Guevara has one claim which arguably goes to the validity of his guilty plea, that his attorney was ineffective for promising him that he would only receive a sentence of 24 months and that it could not be enhanced 16 levels because he did not serve a year in jail for his previous conviction. Because this claim goes to the validity of the guilty plea we must determine whether Guevara's plea was knowing, intelligent and voluntary. As a result, the Court will examine this claim of ineffective assistance of counsel.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

The purpose of the Sixth Amendment's guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding against him. Strickland v. Washington, 466 U.S. 668, 692 (1984). Any deficiencies in counsel's performance must be prejudicial to the defendant in order to constitute ineffective assistance. Id. Accordingly, in order for Guevara to have his conviction overturned based upon his ineffective assistance of counsel claims, he must demonstrate two elements: (1) counsel's performance was so defective that he/she was not functioning as counsel as guaranteed under the Sixth Amendment; and, (2) prejudice resulted from the defective performance. Id. at 688.

Under this Strickland analysis, the performance inquiry focuses on whether counsel's assistance was reasonable considering the totality of the circumstances. Id. The prejudice inquiry focuses on whether the defendant is able to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Id. at

694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id. at 692.  Hence, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error did not affect the judgment.  Id. at 691.

In the guilty plea context, while the performance prong of the Strickland test remains the same, to establish prejudice the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985), *accord* Griffin v. United States, 330 F.3d 733, 737 (6th Cir. 2003).  "A defendant challenging his attorney's conduct during plea bargaining, moreover, 'must show that counsel did not attempt to learn the facts of the case and failed to make a good faith estimate of a likely sentence. He must also show that his lawyer's deficiency was a decisive factor in his decision to plead guilty.'"  Pough v. United States, 442 F.3d 959, 966 (6th Cir. 2006), *quoting* United States v. Cieslowski, 410 F.3d 353, 358-59 (7th Cir. 2005)); *see also* Smith v. United States, 348 F.3d 545, 553-54 (6th Cir. 2003) (counsel's failure to provide professional guidance to a defendant regarding his sentence exposure prior to rejecting a plea offer may satisfy both the performance and prejudice prongs of the Strickland test).

Significantly, both prongs of the test must be met for a finding of ineffective assistance, but courts are not required to conduct an analysis under both; the court need not address the question of competence if it is easier to dispose of the claim due to the lack of prejudice.  Strickland, 466 U.S. at 697; Baze v. Parker, 371 F.3d 310, 321 (6th Cir. 2004).  Also, the reviewing court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland. 466 U.S. at 690.  "Defendants alleging the ineffective assistance of

counsel bear 'a heavy burden of proof.'" Pough 442 F.3d at 966, *citing* Whiting v Burt, 395 F.3d 602, 617 (6th Cir. 2005)). To meet this burden Guevara must show that "the likelihood of a different result" is "substantial, not just conceivable." Harrington v. Richter, 131 S.Ct. 770, 792 (2011). Guevara cannot show that but for his counsel's error there was a substantial likelihood of a different result. His claims are not supported by the record and he is not entitled to relief.

In his plea agreement, Guevara stipulated to the following regarding his prior felony:

> (b) The Defendant was convicted of the aggravated felony offense of Assault Third Degree by a final judgment of the Fayette (Kentucky) Circuit Court, Case No. 07-CR-540, entered on or about May 30, 2007, at which time he received a sentence of 1 year, which was conditionally discharged for 2 years.

[Record No. 29]. In addition, the parties jointly recommended certain guidelines calculations, including the following:

> (d) Pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), increase the offense level by 16 levels for his conviction for a crime of violence.

[Record No. 29].

During his rearraignment, Guevara stated, under oath, in open court, that he was aware of the maximum penalty he faced and stated there were no promises made to him other than what was contained in the plea agreement. The following is an excerpt from the Transcript of Guevara's re-arraignment held on May 21, 2012:

> THE COURT: Now, going on, in the plea agreement it says -- and I will advise you that the maximum consequence for your plea is this. You can be sent to prison for not more than 20 years. You can -- after prison you will be put on supervised release. And the maximum supervised release is three years… Do you understand that I've outlined for you the maximum consequences of your guilty plea?
>
> GUEVARA: Yes, Your Honor.

6

<pre>                              *   *   *   *
</pre>

> THE COURT: Well, let me ask you this. Are there any promises that have been made to you that are not written in this plea agreement?
>
> GUEVARA: No. No, Your Honor.
>
> THE COURT: And have you made any promises that are not written in the plea agreement?
>
> GUEVARA: No.
>
> THE COURT: How about the plea supplement? Is there anything that's been made relative to that, any promise that's been made that's not written in the plea supplement, besides the plea agreement?
>
> GUEVARA: No, Your Honor.
>
> THE COURT: Okay. All right. Are you being forced or coerced in any way to plead guilty?
>
> GUEVARA: No.
>
> THE COURT: Are you just pleading guilty because you are guilty?
>
> GUEVARA: Yes.
>
> THE COURT: And not for any other reason at all?
>
> GUEVARA: No.

[Record No. 45].

The Sixth Circuit Court of Appeals has applied the "totality of the circumstances" test to determine the validity of a guilty plea. In <u>United States v. Young Ko</u>, 485 Fed.Appx. 102 (6th Cir. 2012), the court explained the process used by the District Court during the Defendant's re-arraignment and explained why it was satisfactory to warrant a knowing, intelligent and voluntary guilty plea.

> During the plea hearing, the district court, complying with Federal Rule of Criminal Procedure 11, explained to Ko the significance of his guilty plea and the constitutional rights that he would be

> waiving. Ko stated that he understood his rights and the effect of the plea in waiving those rights. The district court also informed Ko of the collateral consequences that his guilty plea carried, and Ko indicated that he understood those consequences. The government summarized count one of the superseding indictment, and the district court discussed the elements of the crime that the government would be required to prove beyond a reasonable doubt if the case were to go to trial. Ko stated that he understood the charge. The district court advised Ko of the minimum and maximum penalties that could be imposed for the charge that he faced, including imprisonment, supervised release, fine, and special assessment. Ko stated that he understood those penalties.
>
> The district court indicated that the advisory sentencing guidelines play a role in sentencing, and inquired whether Ko had discussed with his attorney how the advisory sentencing guidelines may apply in his case. Ko indicated that he had discussed the sentencing guidelines with his attorney. The government set forth the essential terms of Ko's plea agreement. Afterwards, Ko expressed his agreement with the government's recitation of those terms.
>
> Ko confirmed that he had ample time to discuss his case and his decision to plead guilty with his attorney and that he was satisfied with counsel's advice. He stated that he was not under the influence of any prescription medication, narcotic drugs, or alcohol that would affect his clarity of thought. Ko stated that he understood his criminal proceedings. Ko also indicated that his guilty plea was voluntary and not the result of any threats, promises, or mental or physical coercion. A Drug Enforcement Administration special agent testified regarding the factual basis of Ko's case and Ko stated that the facts, as stated by the agent, were accurate. Thus, under the totality of the circumstances, the record reflects that Ko entered a valid guilty plea.

Young Ko, 485 Fed.Appx. at 104.

United States District Judge Jennifer Coffman went through the very same steps with Guevara that the Judge did in Young Ko. Judge Coffman asked Guevara questions regarding his educational history, his ability to read and write English, his history of mental illness, history of drug or alcohol abuse. [Record No. 45]. Guevara stated that he understood English very well,

he had no history of mental illness, and that he was completely sober during the time of the hearing. [Record No. 45].

After determining that Guevara was competent to enter a guilty plea, Judge Coffman went on to explain to Guevara the significance of his guilty plea and the constitutional rights he would be giving up. [Record No. 45]. She explained the specific rights he was waiving under the plea agreement and the collateral consequences that he would incur by pleading guilty. [Record No. 45]. To all of this, Guevara affirmed to the Court that he understood and wanted to continue to plead guilty. [Record No. 45]. The following is another excerpt from the Transcript of Guevara's re-arraignment held on May 21, 2012:

> THE COURT: Okay. And do you understand that you may appeal only if my sentence is above the guidelines I decide apply, and the government may appeal under certain circumstances too? Do you understand that?
>
> GUEVARA: Yes.
>
> THE COURT: Okay. Do you understand if you go to federal prison, there is no release on - - release on parole?
>
> GUEVARA: Yes, Your Honor.
>
> THE COURT: Okay. And then do you understand if you plead guilty today, you're going to be stuck with that plea, you're bound by it, unless you can give me a fair and just reason for you to withdraw that plea?
>
> GUEVARA: Yes.
>
> THE COURT: Okay. You hesitate. Is it because you are concerned about that or because I need to explain it differently?
>
> GUEVARA: No. Guilty because I'm afraid to go to prison. That's why.
>
> THE COURT: I understand. I understand. But you understand if you plead guilty today, you're not going to be allowed to come back in and change your mind and withdraw your plea?

GUEVARA: Yes, Your Honor.

[Record No. 45].

Guevara also stated that he was satisfied with counsel, that he had ample time to discuss the contents of the plea agreement with his attorney and that he fully understood the facts and that they were correct in every detail. [Record No. 45]. Furthermore, Guevara was also able to give an independent factual basis for his crime and the reason he was pleading guilty. [Record No. 45].

Taking all of this into account, Judge Coffman accepted Guevara's guilty plea and stated to him, "I find that you are competent and capable of entering an informed plea. You're aware of the charges against you. You're aware of the consequences of your plea. Your plea is knowing and voluntary. You've stated an independent, factual basis that contains all of the essential elements of the offense. So you are guilty as charged, Mr. Guevara." [Record No. 45 at 23].

Applying the "totality of the circumstances" test as in <u>Young Ko</u>, the record in this case indicates that Guevara entered a valid guilty plea which was knowing, intelligent and voluntary. Further evidence consistent with Guevara's sworn testimony before the Court can be found in the Affidavit of Harold L. Kirtley, II, Guevara's counsel during these proceedings. [Record No. 48-1]. In the affidavit, Kirtley states, "At no time did I **ever** promise Mr. Guevara-Barcenas (1) that he would receive any particular sentence, let alone a sentence of 26 months, or (2) that the 16-level enhancement did not apply." [Record No. 48-1, at 3].

There is nothing in the record to support a finding that counsel promised Guevara that he would receive a lower sentence than imposed. In fact, the record establishes that his plea was not based upon any promises other than those contained in the plea agreement. Even if we

assume such a representation was made, there is nothing to indicate that Guevara would not have entered a guilty plea. "[A] petitioner cannot simply assert that he would have gone to trial were it not for the deficient performance of his attorney." Meek v. Bergh, 526 Fed.Appx. 530, 535 (6th Cir. 2013), "[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Id., *quoting* Padilla v. Kentucky, 559 U.S. 356. Here, Guevara states that he would not have pleaded guilty but he fails to explain why it would have been rational for him to proceed to trial.

Guevara has failed to meet his burden that he was prejudiced by his counsel's actions. Guevara fails to show that there is a "substantial likelihood" that but for his counsel's actions there would have been a different outcome. He also fails to show that it would have been rational for him to reject the plea agreement and proceed to trial. Furthermore, because Guevara entered a knowing, intelligent and voluntary guilty plea he has effectively waived his right to collaterally attack his guilty plea and conviction. Accordingly, Guevara's ground for relief based on ineffective assistance of counsel claim for misleading him or making a false promise should be denied.

## C. UNCONSTITUTIONAL SENTENCE

Finally, Guevara raises a claim that his sentence was incorrect; however, it is barred due to the waiver in his plea agreement. As previously stated, Guevara gave a knowing, intelligent and voluntary plea; therefore the waivers in his plea agreement are valid. Even if this claim was not barred due to his waiver of collateral attack, it is without merit and will afford Guevara no relief.

In his motion to vacate, Guevara states that his sentence was unconstitutional because his offense level was wrongly enhanced by 16 levels under the Sentencing Guidelines. He argues

that his sentence was incorrectly enhanced because he did not serve at least one year in prison for his previous conviction of Third Degree Assault under Kentucky Law, and that Third Degree Assault does not meet the definition of a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). Guevara is incorrect in this assertion; the 16 level enhancement of his sentence was, in fact, proper under the Sentencing Guidelines.

At sentencing, Guevara was assigned a base offense level of 8, however, his offense level was increased by 16 levels due to his previous conviction for Third Degree Assault, resulting in an adjusted offense level of 24.

The Sentencing Guidelines provide that if a defendant was deported, or unlawfully remained in the United States after a crime of violence, the offense level will be increased by 16 levels. U.S.S.G. § 2L1.2(b)(1)(A)(ii). A "crime of violence" is defined, in part, as "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 comment. (n.1(B)(iii)). Guevara's previous conviction for Third Degree Assault under KRS § 508.025(1)(a) was a result of an incident where officers observed Guevara smoking something from a glass pipe while in his vehicle. [Presentence Investigation Report, hereinafter "PSR"]. During the subsequent arrest, Guevara assaulted the officers, causing a laceration on one officer's left shin, requiring officers to deploy both TASER and ASP batons to defend themselves. [PSR]. Ultimately, it required three firemen and three police officers to subdue Guevara. [PSR]. Under Kentucky law, one is guilty of Assault in the Third Degree "when the actor: (a) Recklessly, with a deadly weapon or dangerous instrument, or intentionally causes or attempts to cause physical injury to: (1) a state county, city or federal peace officer." KRS § 508.025(1)(a)(1). Clearly, Guevara's prior conviction based on this conduct involved the use,

and attempted use of physical force against law enforcement officers who were in the process of conducting an arrest, and was properly classified as a "crime of violence" pursuant to U.S.S.G. § 2L1.2 comment. (n.1(B)(iii)). His offense level was correctly increased by 16 levels.

Guevara also asserts that the increase in his offense level was improper because he did not serve a full year in prison for the assault conviction. Guevara was sentenced to one (1) year incarceration but it was conditionally discharged for two (2) years. [Record No. 29]. However, this makes no difference in the issue being considered. Under the Sentencing Guidelines, the term "felony" is defined as "any federal, state, or local offense <u>punishable by imprisonment for a term exceeding one year</u>." U.S.S.G. § 2.L1.2 (Cmt. 2) (emphasis added). In <u>U.S. v. Romero-Estrada</u>, 14 Fed.Appx. 332 (6th Cir. 2001), the Sixth Circuit held that an "aggravated felony" means a conviction for which the term of imprisonment imposed is at least one year, rather than that the time actually served is at least one year. In <u>U.S. v. Tutt</u>, 432 Fed.Appx. 469, 471 (6th. Cir. 2011, the Sixth Circuit held that even if the underlying felony conviction did not involve a term of imprisonment, "that fact does not exclude the conviction from his criminal-history calculation. It still counts." Guevara's previous conviction was for Third Degree Assault, which is a Class D felony under Kentucky Law. KRS § 508.025(2). A Class D Felony is punishable by a term of imprisonment of "at least one (1) but not more than five (5) years." KRS § 532.020(1)(a). Because Third Degree Assault is punishable by a term of imprisonment of "at least one (1) year" it fits within the Sentencing Guidelines definition of a felony conviction. Furthermore, Guevara was actually sentenced to one (1) year imprisonment for this crime. As previously stated, in calculating a defendant's sentence, a court looks to the sentence imposed and not the time actually served. <u>Tutt</u>, 432 Fed.Appx. at 471. Based on this analysis, the

enhancements Guevara received on his sentence were correct and therefore his claim that he received an unconstitutional sentence provides no relief.

III. CONCLUSION

This Court does not find adequate grounds on which to grant the defendant habeas relief. The defendant did not receive an unconstitutional sentence and was afforded effective assistance of counsel. Therefore, the defendant may not be afforded relief on grounds claimed in his habeas petition. Having considered the matter fully, and for the reasons stated above,

IT IS RECOMMENDED that Defendant Agustin Guevara-Barcenas' Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Record No. 35] be DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Ann, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller V. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

Signed August 29, 2014.



Signed By:
*Edward B. Atkins* EBA
United States Magistrate Judge